UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| THOMAS W. WESTERFIELD, | ) | |
| | ) | |
|    Appellant, | ) | Civil Action No. 6: 06-20-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WORLD INVESTMENT | ) | **MEMORANDUM OPINION** |
| CORPORATION, | ) | **AND ORDER** |
| | ) | |
|    Appellee. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Debtor Thomas Westerfield's Appeal of the Bankruptcy Court's Denial of Discharge. [Record No.1] In addition to the briefs filed by the parties, oral arguments were made during a hearing held this date. Having considered the parties respective positions, the undersigned concludes that, because the Debtor has failed to satisfactorily explain the disposition of the assets in question, the Bankruptcy Court's denial of discharge should be affirmed.

**I.   BACKGROUND**

The relevant facts of this case are undisputed. Indeed, the trial was largely based on the parties' stipulations, as the debtor did not appear at the trial. These stipulations were:

> 1. Plaintiff World Investments Corporation is the holder of a retail installment contract and security agreement entered into between Thomas Westerfield and Rody Truck Center Corporation on September 3, 2003 by virtue of assignment on even date. Plaintiff World Investments is the holder of a perfected lien on a 1991 Peterbilt semi-tractor-truck, VIN No: 1XP5DR9X6MN306027.

> 2. In the spring of 2004 Westerfield worked for Williams Cattle Company of London, Kentucky.
>
> 3. In or near June 2004 Defendant Westerfield quit his employment with Williams Cattle Company.
>
> 4. On or shortly after the day that Defendant Westfield quit his employment with Williams Cattle Company, Defendant Westerfield left the subject 1991 Peterbilt semi-tractor truck on the premises of Williams Cattle Company and removed the tags and plates from the vehicle and cancelled the insurance on the vehicle.
>
> 5. Defendant Westerfield did not obtain permission from the owner of Williams Cattle Company to leave the subject semi-tractor truck at Williams Cattle Company after he left his employment there.
>
> 6. Defendant Westerfield did not obtain permission from World Investment Corporation to leave the subject semi-tractor truck at Williams Cattle Company after he left his employment there.
>
> 7. Defendant Westerfield does not know when or by whom or by what means the subject semi-tractor truck was ultimately removed from Williams Cattle Company and does not know its current whereabouts.
>
> 8. At some point Defendant Westerfield notified World Investment Corporation that he was leaving the semi-tractor truck at Williams Cattle Company.

[Record No. 7, pgs. 2-3]

Following trial, United States Bankruptcy Judge Joseph M. Scott ruled in favor of World Investment Corp., and denied discharge to Westerfield. Judge Scott determined that World Investment had met its initial burden to establish the existence of the collateral and that its current whereabouts were unknown, shifting the burden to Westerfield to satisfactorily explain the loss. [Record No. 1, Ex.2] Because Westerfield did not "know when or how or by whom the collateral disappeared or otherwise as to its ultimate disposition", Judge Scott concluded that the debtor had failed to satisfactorily explain the loss as required by 11 U.S.C. §727(a)(5). *Id.*

Consistent with this finding, he denied Westerfield's discharge in bankruptcy. This appeal followed.

## II. STANDARD OF REVIEW

A district court reviewing a bankruptcy court's decision functions as an appellate court, applying the standards of review normally applied by federal appellate courts. *In re H.J. Scheirich Co.*, 982 F.2d 945 (6th Cir. 1993). Conclusions of law made by the bankruptcy court are reviewed by the district court *de novo*. *City of White Plains, NY v. A&S Galleria Real Estate, Inc.*, 270 F.3d 994 (6th Cir. 2001). A *de novo* review requires a court to review the legal conclusions reached without regard to the bankruptcy court's prior findings of law. *First Union Mortgage Corp. v. Eubanks*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998)

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses." Fed. R. of Bankr. P. 8013. A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985). This standard does not permit a reviewing court to reverse the trial court's findings of fact merely because it would have reached a different conclusion. *Id*. As long as the trial court's findings are "reasonable and supported by the evidence," they may not be overturned. *In re Southern Indus. Banking Corp.*, 809 F.2d 329 (6th Cir. 1987) (citation omitted). Absent the "most cogent evidence of mistake or miscarriage of justice" a bankruptcy court's findings will not be disturbed. *In re Edward M.*

*Johnson and Assoc., Inc.*, 845 F.2d 1395, 1401 (6th Cir. 1988) (*quoting Slodov v. United States*, 552 F.2d 159, 162 (6th Cir. 1977).

In reviewing a bankruptcy court's order denying discharge, the reviewing court will not overturn the bankruptcy court's decision unless it is clearly erroneous. *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996) (internal citations omitted). This standard applies to "subsidiary fact questions, such as whose version of events is correct, as well as to the ultimate question of whether the debtor has satisfactorily explained the loss of assets." *Id.*

### III.  ANALYSIS

Westerfield argues that the bankruptcy court erred in ruling that he failed to "explain satisfactorily. . . any loss of assets . . ." 11 U.S.C. §727(a)(5). More specifically, Westerfield argues that the court applied an incorrect legal interpretation of the Code term "loss of assets." [Record No. 7, pgs. 3-5] He asserts that the phrase should be interpreted to require only that the debtor explain how, where and why he gave up possession of the assets in question. In response, World Investment contends that the bankruptcy judge's interpretation (i.e., that the phrase refers to the ultimate disposition of the assets) is the correct one.

This Court will review the bankruptcy judge's legal interpretation of the meaning of the phrase "loss of assets" *de novo*, as it is clearly a issue of law. *City of White Plains,* 270 F.3d 994. If the bankruptcy court correctly interpreted the phrase "loss of assets", the ultimate determination of whether the debtor has satisfactorily explained the loss is a question of fact. *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996). It is therefore reviewed under the "clearly erroneous" standard. *Id.*; *In re Edward M. Johnson*, 845 F.2d 1395.

Title 11 of the United States Code, section 727(a)(5) provides:

(a) The court shall grant the debtor a discharge, unless–

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

Westerfield asserts that "the determination of whether an explanation is satisfactory depends primarily on the truthfulness of the debtor." [Record No. 7, pg. 3] In support, he cites a number of cases, each of which contains language suggesting that the debtor only need provide details as to what happened to the assets, not an explanation of why the debtor thought each expenditure was necessarily wise or justified. *See*, e.g. *In re Bernstein*, 78 Bankr. 619 (S.D. Fla. 1987); *In re Hamilton*, 306 B.R. 575 (Bankr. W.D.Ky. 2004)

However, as one of the cases cited by Westerfield makes clear, to be satisfactory the explanation must "account for the disposition [of the asset]." *In re Bernstein*, 78 Bankr. at 624; *citing* Cowans, *Bankruptcy Law and Practice*, Section 5.43 (1986). Similarly, the American Law Reporter 2nd suggests that "'loss[] of assets' has been interpreted to mean the disposition of particular assets . . ." Ludington, *Denial of Discharge*, 65 A.L.R.2d 999 (2005) (internal citations omitted); *see also In re Mezvinsky*, 265 B.R. 681, 690 (Bankr. D. Pa. 2001) ("the court is not concerned with whether the disposition of the assets was proper under the Bankruptcy Code, but rather only whether the explanation satisfactorily describes what happened to the assets.")

The confusion arises from the fact that most of these cases address the determination of what happened to liquid assets like money. In these contexts, because money is fungible, the

debtor is only required to explain to whom he gave the money, and when. The debtor could not, and is not required to, explain what ultimately happened to the asset once he relinquished possession, as a non-fungible asset like money has no real "ultimate disposition". Here, however, World Investment had a security interest in a non-fungible asset, namely the 1991 Peterbilt truck.

Westerfield argues that, because World Investment has stipulated that Westerfield surrendered possession of the truck in a parking lot, his explanation as to how he "lost" the asset is credible, and therefore satisfactory. However, the Seventh Circuit applied a slightly different standard in a case dealing with non-fungible assets. In *In re D'Agnese*, the court upheld a denial of discharge where the debtor "testified that she did not know what happened to many of the more valuable assets". 86 F.3d at 734. Like Westerfield, the debtor in *D'Agnese* argued that unless the bankruptcy judge found her explanations not credible (i.e., a lie), they were by definition satisfactory. Instead, the Seventh Circuit determined that the §727(a)(5) did not set out a dichotomy between a non-credible explanation and a satisfactory one. *Id.* "Under § 727(a)(5), a satisfactory explanation 'must consist of more than . . . vague, indefinite, and uncorroborated' assertions by the debtor." *Id.*; *see also In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984) ("Vague and indefinite explanations of losses . . . are unsatisfactory.") This understanding of §727(a)(5) allows the bankruptcy court to "believe" the debtor's testimony while still finding his explanation as to the asset's ultimate disposition to be unsatisfactory.

The only question which remains is whether the bankruptcy court's determination that the explanation offered by Westerfield was "not satisfactory" was clearly erroneous. A

bankruptcy judge is "granted broad discretion in making determination of sufficiency of explanation under 11 U.S.C.S. § 72(a)(5)." *In re Drenckhahn,* 77 BR 697 (Bankr. D. Minn. 1987). The evidence at trial was that for a period of time prior to the spring of 2004, Westerfield was working as an independent contractor for Williams Cattle Company in London, Kentucky. Westerfield would occasionally leave his truck there between runs, which was a fairly common practice. (Tr. 24) That spring, he apparently quit that job and left his truck in a public parking which the company shared with several other businesses. He did not notify Williams Cattle he was leaving the truck in the lot, nor did he obtain their permission to leave it there indefinitely. (Tr. 17)

Westerfield never delivered the truck to Williams Cattle or to anyone else, nor does anyone recall seeing his truck in that parking lot after he quit. (Tr. 21) There is no evidence the truck was ever repossessed, although someone did check VIN numbers in an attempt to locate Westerfield's truck. (Tr. 25) It is unclear whether Westerfield ever learned of this attempt. (Tr. 27-28). Given this evidence, the Court cannot conclude that the bankruptcy judge's ruling was clearly erroneous. Westerfield's explanation that he left his truck in a parking lot shared by several businesses after he quit working for Williams Cattle without notifying anyone he was doing so is unsatisfactory.

**IV. CONCLUSION**

Based upon the foregoing analysis, it is hereby **ORDERED** that the Bankruptcy Court's Order Denying Discharge is **AFFIRMED**. All issues raised herein having been resolved, this appeal is hereby **DISMISSED**.

This 2nd day of May, 2006.



Signed By:
*Danny C. Reeves*  DCR
**United States District Judge**